01

02

03

04

05

06

07                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
08                                     AT SEATTLE

09  CECIL STEWART,                          )    CASE NO. C09-1152-MAT
                                            )
10          Plaintiff,                      )
                                            )
11      v.                                  )    ORDER GRANTING
                                            )    DEFENDANT'S MOTION FOR
12  MASTERS BUILDERS ASSOCIATION            )    SUMMARY JUDGMENT
    of KING and SNOHOMISH COUNTIES,         )
13                                          )
            Defendant.                      )
14  _____ )

15                                   INTRODUCTION

16          Plaintiff Cecil Stewart brought this employment action against defendant Master

17  Builders Association of King and Snohomish Counties ("MBA") pursuant to the

18  anti-retaliation provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).

19  He claims retaliation by and constructive discharge from his employment with defendant

20  following his complaint that MBA employees were not being paid overtime as required by

21  federal and state laws.

22          Defendant filed a motion for summary judgment and requested oral argument.  (Dkt.

ORDER
PAGE -1

17; *see also* Dkt. 22.)   Plaintiff opposes the motion.   (Dkt. 21.)   Now, having considered the parties' submissions, along with the remainder of the record, the Court finds oral argument unnecessary and defendant entitled to summary judgment based on plaintiff's failure to make a showing that he engaged in "protected activity" under § 215(a)(3).

BACKGROUND

Plaintiff began his employment with MBA as a Sales & Marketing Director in April 2006.   (Dkt. 18, Ex. A at 15-16.)   In a conversation with Lynda Hester, Human Resources Director/Director of Administration for MBA, in the summer of 2006, plaintiff raised the issue of overtime pay based on the complaints of a number of employees.   (Dkt. 21-1, ¶ 3; *see also* Dkt. 18-2 at 30-33.)[1]   Hester responded that a consultant had looked into the issue and determined that MBA employees were exempt.   (Dkt. 18-2 at 30-33.)

"Shortly after speaking to the Washington State Department of Labor and Industries [(L&I)] about overtime requirements[]" (Dkt. 21-1, ¶4),[2] plaintiff sent an e-mail, on April 11, 2007, to Hester and Rick Miller, Chief Operating Officer of MBA, stating:

> It seems from the Washington state Labor and Industries (L&I) documents on their website that we may be operating outside the law by having all our employees exempt.
>
> Perhaps I am not interpreting what I see there correctly but it seems that even some of our Directors may not be "exempt" according to L&I.
>
> Could you please clarify for me why all of our employees are categorized as

---

[1] Defendant disputes this assertion (*see* Dkts. 23 & 24), but accepts it as true for the purposes of its motion.

[2] Plaintiff raised the assertion that he contacted L&I in his opposition to defendant's motion and in a supportive declaration.   (Dkts. 21 & 21-1.)   Defendant averred in reply that plaintiff had not previously alleged he contacted L&I, instead indicating only that he reviewed materials publically available on L&I's website.   (Dkts. 23 & 24.)   The Court accepts plaintiff's assertion as to his contact with L&I as true for the purpose of considering defendant's motion.

ORDER
PAGE -2

01      exempt?

02  (Dkt. 20, Ex. A.)  Hester replied:  "Cecil – you aren't the first person to question this.  We

03  questioned it ourselves.   However, we worked with a couple of HR specialists who confirmed

04  that all of our staff would be considered administrative and exempt.  Please see attached

05  document."   (*Id.*)   A subsequent e-mail from plaintiff on that same date stated:

06          In my role as director I have a responsibility to our employees and to our
          company.   In light of what I have learned, I believe we as an organization may
07          be exposed to the harsh realities of our legal system.   I also know that I may
          very well be wrong as I am not an HR specialist.

08          The portion of the document I mentioned that directly relates to the majority of
09          our workers is:

10          [Excerpt omitted]

11          According to L&I, the rule that affords the worker the most protection is the one
          that remains primary.   Under the above-stated rules, a director who does not
12          direct the activities at least two full time employees cannot be considered
          exempt.   Therefore workers who have a manual-labor component in their
13          responsibilities are non-exempt.

14          I am attaching a copy of the document for your review.

    (*Id.*)

15
        Plaintiff subsequently spoke to Hester about this issue "[a] couple of times[,]" and she
16
    reiterated the response described above.   (*Id.* Dkt. 18-2 at 36.)   In one of those conversations,
17
    also on April 11, 2007, plaintiff specifically identified Sales & Marketing Coordinator Andrea
18
    Morrison as an employee who had complained to him about the issue of overtime pay.   (Dkt.
19
    21-1, ¶ 4; *see also* Dkt. 18-2, Ex. A at 37, 59.)   Plaintiff also, in a May 2007 e-mail to Hester
20
    and Miller, expressed concern that an incident in which an individual associated with MBA had
21
    declared to others that plaintiff was about to be let go was a result of his having asked the
22
    question "'why are all our employees exempt?'"  (Dkt. 18-3, Ex. I.)   Hester replied:  "Cecil –

01  I'm sorry to hear about Bob's comments.   Your question regarding exempt vs. nonexempt is a

02  fair question which I hope we answered satisfactorily to you.   The question does not have any

03  bearing on your employment here.   To my knowledge everyone seems happy with your work."

04  (*Id*.)

05          Plaintiff testified that he raised the issue of overtime pay with MBA based on

06  complaints received from employees because he "needed to make sure that their complaints

07  were addressed through HR[,]" and it was his "responsibility as the boss of someone that came

08  to [him] and complained, that [he] should make that complaint in writing . . . to HR."   (Dkt.

09  18-2, Ex. A at 35-36.)   He concedes that reporting employee complaints to human resources

10  was his responsibility as an MBA director and supervisor.   (*Id*. at 36-37.)   He maintains,

11  however, that his "main purpose" in taking the above-described actions "was to correct what

12  [he] thought was MBA's unlawful practice of not paying overtime to some employees of MBA

13  including Andrea who reported to [him]."   (Dkt. 21-1, ¶5.)

14          Plaintiff left his employment with MBA in February 2009.   (Dkt. 18-2 at 39.)   He

15  concedes that, outside of the above-described conversations and e-mails, he did not raise the

16  issue of overtime pay with anyone at MBA at any time prior to leaving or at the time he left his

17  employment.   (*Id*. at 39-40.)[3]

18                                              DISCUSSION

19          Summary judgment is appropriate when "the pleadings, depositions, answers to

20  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

3 Because the Court finds plaintiff's claims subject to dismissal based on the discrete issue of whether
he engaged in protected activity under §215(a)(3), it includes herein only the facts and arguments
associated with this issue.

ORDER
PAGE -4

01 genuine issue as to any material fact and that the moving party is entitled to a judgment as a

02 matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

03 The moving party is entitled to judgment as a matter of law when the nonmoving party fails to

04 make a sufficient showing on an essential element of his case with respect to which he has the

05 burden of proof. *Celotex*, 477 U.S. at 322-23.

06 Genuine issues of material fact that preclude summary judgment are "disputes over

07 facts that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty*

08 *Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a summary judgment motion, the court

09 must view all facts and inferences therefrom in the light most favorable to the nonmoving party.

10 *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "[A] party opposing a

11 properly supported motion for summary judgment may not rest upon mere allegation or denials

12 of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."

13 *Anderson*, 477 U.S. at 256 (citing Fed. R. Civ. P. 56(e)).

14 A.   Section 215(a)(3)

15 Plaintiff alleges MBA unlawfully retaliated against him in violation of FLSA provision

16 § 215(a)(3). That provision makes it unlawful for an employer:

17 to discharge or in any other manner discriminate against any employee because
such employee has filed any complaint or instituted or caused to be instituted
18 any proceeding under or related to this chapter, or has testified or is about to
testify in any such proceeding, or has served or is about to serve on an industry
19 committee.

20 29 U.S.C. § 215(a)(3).

21 As a remedial statute, the FLSA is construed broadly. *Lambert v. Ackerley*, 180 F.3d

22 997, 1003 (9th Cir.1999) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,

01  321 U.S. 590, 597 (1944)).   Its anti-relation provision is intended "to provide an incentive for

02  employees to report wage and hour violations by their employers[,]" and "to ensure that

03  employees are not compelled to risk their jobs in order to assert their wage and hour rights

04  under the Act."   *Id*. at 1003-04 (citing *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288,

05  292-93 (1960)).   The Ninth Circuit Court of Appeals has, therefore, held that, "in order for the

06  anti-retaliation provision to ensure that 'fear of economic retaliation' not 'operate to induce

07  aggrieved employees quietly to accept substandard conditions,' it must protect employees who

08  complain about violations to their employers, as well as employees who turn to the Labor

09  Department or the courts for a remedy."   *Id*. at 1004 (quoting *Mitchell*, 361 U.S. at 292).

10          To prevail on a retaliation claim under the FLSA, a plaintiff must first make a prima

11  facie showing that:   (1) he engaged in activity protected by the FLSA; (2) defendant took an

12  adverse employment action; and (3) there was a causal link between the protected activity and

13  the adverse action.   *Conner v. Schnuck Mkts.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (applying

14  burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

15  (1973), to FLSA retaliation cases). *Cf. Raad v. Fairbanks N. Star Borough Sch. Dist*., 323 F.3d

16  1185, 1195-97 (9th Cir. 2003) (applying same to Title VII retaliation claim).   If a plaintiff

17  meets this standard, the burden shifts to the employer to offer a legitimate, non-discriminatory

18  reason for the adverse action.   *Conner*, 121 F.3d at 1394.   The burden thereafter shifts back to

19  the plaintiff to demonstrate that the employer's proffered reason is pretextual.   *Id*.

20          Defendant argues in its motion that plaintiff fails at every level, that there is no material

21  factual dispute, and that these claims should be dismissed on summary judgment.   As argued

22  by defendant, and discussed below, this case may be resolved on summary judgment solely

01   with consideration of whether plaintiff engaged in "protected activity" under § 215(a)(3).

02   B.   <u>Protected Activity Under Section 215(a)(3)</u>

03         In arguing plaintiff's inability to make out the first requirement of his prima facie case –

04   that he engaged in activity protected by the FLSA – defendant relies on a series of cases holding

05   that protected activity in a FLSA retaliation case cannot be satisfied without "stepping outside"

06   the employee's professional role and taking a role "adverse" to the company:

07             In order to engage in protected activity under § 215(a)(3), the employee must
              step outside his or her role of representing the company and either file (or
08            threaten to file) an action adverse to the employer, actively assist other
              employees in asserting FLSA rights, or otherwise engage in activities that
09            reasonably could be perceived as directed towards the assertion of rights
              protected by the FLSA.

10   *McKenzie v. Renberg's Inc*., 94 F.3d 1478, 1486-87 (10th Cir. 1996).

11         In *McKenzie*, the Tenth Circuit found:

12            Here, McKenzie never crossed the line from being an employee merely
              performing her job as personnel director to an employee lodging a personal
13            complaint about the wage and hour practices of her employer and asserting
              a right adverse to the company. McKenzie did not initiate a FLSA claim against
14            the company on her own behalf or on behalf of anyone else. Rather, in her
              capacity as personnel manager, she informed the company that it was at risk of
15            claims that might be instituted by others as a result of its alleged FLSA
              violations.
16

17   *Id*. at 1486.   The Court pointed to the fact that the employee's job responsibilities included

18   "participating in wage and hour issues[]" and the absence of any evidence suggesting she was

19   "asserting any rights under the FLSA or that she took any action adverse to the company[.]"

20   *Id*. at 1487.   It found that the record established her involvement in the issue was "completely

21   consistent with her duties as personnel director for the company to evaluate wage and hour

22   issues and to assist the company in complying with its obligations under the FLSA."   *Id*.

ORDER
PAGE -7

01   (affirming judgment as a matter of law on this issue).   *Cf. Conner*, 121 F.3d at 1394 (finding

02   that a food clerk engaged in protected activity by reporting overtime violations because the

03   employee had "no management responsibilities regarding the calculation of overtime wages.")

04         Other Circuit Courts have reached similar conclusions.   In *Claudio-Gotay v. Becton*

05   *Dickinson Caribe, Ltd*., 375 F.3d 99, 101-03 (1st Cir. 2004), the First Circuit concluded that a

06   supervisory employee who informed an employer as to potential FLSA violations, after

07   reviewing invoices documenting his subordinates' hours and corresponding pay, did not engage

08   in protected activity because the action was taken in furtherance of his job responsibilities.   *See*

09   *also id*. (also finding that the employee's refusal to subsequently sign invoices as directed did

10   not constitute the filing of a complaint under the FLSA given that it "occurred after the whistle

11   had been blown and after corrective actions were being taken to remedy any FLSA

12   violations[.]")   In *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 623, 629-30 (5th Cir.

13   2008), the Fifth Circuit found a field service manager who personally objected to his field

14   technicians' schedule change because of a potential decrease in overtime pay, and who passed

15   along his technicians' question regarding the legality of the change to the company's Human

16   Resources department, did not step outside his role as a manager.   The Court found nothing to

17   suggest that the manager was "personally advocating on behalf of his technicians' statutory

18   rights[,]" or that he had taken a position adverse to the company on this issue. *Id*. at 629-30.

19         The Fifth Circuit's decision in *Hagan* contains reasoning for the rule that the protected

20   activity element of a FLSA retaliation claim requires an employee to step outside the

21   employee's professional role and take on a role adverse to the company:

22

ORDER
PAGE -8

This rule is eminently sensible for management employees like Hagan, because a part of any management position often is acting as an intermediary between the manager's subordinates and the manager's own superiors. The role necessarily involves being mindful of the needs and concerns of both sides and appropriately expressing them. Voicing each side's concerns is not only *not* adverse to the company's interests, it is exactly what the company *expects* of a manager.

If we did not require an employee to "step outside the role" or otherwise make clear to the employer that the employee was taking a position adverse to the employer, nearly every activity in the normal course of a manager's job would potentially be protected activity under Section 215(a)(3). An otherwise typical at-will employment relationship could quickly degrade into a litigation minefield, with whole groups of employees – management employees, human resources employees, and legal employees, to name a few – being difficult to discharge without fear of a lawsuit. For those reasons, we agree that an employee must do something outside of his or her job role in order to signal to the employer that he or she is engaging [in] protected activity under Section 215(a)(3).

*Id.* at 628.

In this case, defendant avers that plaintiff did not engage in protected activity because the concern over whether MBA employees were exempt or nonexempt fell within plaintiff's job responsibilities as a director at MBA, and because he never took on a role adverse to the company.   Defendant points to plaintiff's testimony as supporting the conclusion that it was his role and responsibility as a company director to raise the issue of exempt/nonexempt status. (Dkt. 18-2 at 34-37.)   Defendant further points to plaintiff's April 11, 2007 e-mails as supporting the conclusion that he was raising his concerns in his capacity as a MBA director, including his statement:   "In my role as director I have a responsibility to our employees and to our company."   (Dkt. 20, Ex. A.)   Plaintiff also stated in his e-mails that "*we* may be operating outside the law[]" and asked that Hester clarify why "*our* employees are categorized as exempt[.]"   (*Id.*; emphasis added.)   He additionally acknowledged that he knew he "may very

01 well be wrong" as he was "not an HR specialist." (*Id.*)  Defendant argues that plaintiff's

02 interests were clearly aligned with MBA, not against it, and that, as a result, his retaliation claim

03 fails as a matter of law for failure to prove he engaged in protected activity.

04       Plaintiff maintains he engaged in protected activity when he (1) contacted L&I to find

05 out whether MBA employees were supposed to be paid overtime, (2) made written complaint to

06 MBA on April 11, 2007, (3) orally complained in 2006, and (4) presented Hester with a

07 comparison of federal and state laws he obtained from L&I.  While conceding his overall

08 responsibilities included flagging employment issues, such as wage and hour issues, plaintiff

09 avers he went far beyond the mere performance of his duties through his repeated complaints

10 and advocacy on behalf of MBA employees.

11       In support of his position, plaintiff points to the Ninth Circuit's decision in *Lambert*.

12 In that case, the Court concluded that the following circumstances constituted the filing of a

13 complaint within the meaning of § 215(a)(3):

14     [The plaintiffs] not only complained orally to their employers [sic] about the
    failure to pay adequate overtime wages, and specifically alleged a violation of

15     the FLSA, they also contacted the Department of Labor (which informed them
    that their employer's practices were illegal), hired an attorney to assist them

16     with their claim, and notified their employer in writing of the specific FLSA
    violation they were alleging.

17 *Lambert*, 180 F.3d at 1007.  The Court found that, while "not all amorphous expressions of

18 discontent related to wages and hours constitute complaints filed within the meaning of §

19 215(a)(3)[,]" the actions taken by the plaintiffs in that case "were in no way amorphous[.]"  *Id.*

20 It further stated that, while the above facts "unquestionably amount[ed] to the filing of a

21 complaint within the meaning of § 215(a)(3), less formal and detailed communications also fit

22

01   the statutory definition."   *Id.*   The Court added:

02         Although we need not, and indeed could not, describe the minimum specificity
        with which an employee must assert an alleged FLSA violation in order to find
03         protection under § 215(a)(3) - and we agree with the First Circuit that such
        questions are to be resolved as a matter of factual analysis on a case-by-case
04         basis - it is clear that so long as an employee communicates the substance of his
        allegations to the employer (e.g., that the employer has failed to pay adequate
05         overtime, or has failed to pay the minimum wage), he is protected by §
        215(a)(3).

06 *Id.* at 1007-08.

07       Plaintiff distinguishes some of the case law relied on by defendant.  He notes that

08 *McKenzie*, 94 F.3d 1478, involved a personnel director whose position, by definition, was

09 devoted to resolving personnel and employment issues, and that that director did not initiate a

10 claim on behalf of herself or others, or contact any overtime enforcement agency.  He also

11 points to the Tenth Circuit's statement in that case that protected activities include "actively

12 assist[ing] other employees in asserting FLSA rights, or otherwise engage[ing] in activities that

13 reasonably could be perceived as directed towards the assertion of rights protected by the

14 FLSA."  *Id.* at 1486-87.  Plaintiff inaccurately reads *Claudio-Gotay*, 375 F.3d 99, as holding

15 that an employee engaged in protected activity in assisting other employees in asserting their

16 FLSA rights.  In fact, as described above, the First Circuit in *Claudio-Gotay* found that the

17 employee did *not* engage in protected activity because the action was taken in furtherance of his

18 job responsibilities, and found the refusal to obey an order did not constitute the filing of a

19 complaint because it occurred after the employee complaint and after corrective actions were

20 taken.  *Id.* at 102-03.

21       Plaintiff also addresses two unpublished district court cases pointed to by defendant.

22

He distinguishes a case from the Eastern District of Washington, discussed below, as not involving contact with an outside enforcement agency or the offering of an opinion for the benefit of any specific employee.   *See Stein v. Rousseau*, No. CV-05-264-FVS, 2006 U.S. Dist. LEXIS 54939 (E.D. Wash. Aug. 8, 2006).   He also distinguishes the District of Oregon's decision in *Clemons v. Nike, Inc.*, No. 06-1209-KI, 2007 U.S. Dist. LEXIS 73236 at *24-25 (D. Or. Sept. 28, 2007), as pursuant to the Americans with Disabilities Act and involving nothing more than an employee, in that case an Employee Relations Specialist, simply telling management that it might be violating the ADA.

It does not appear that the Ninth Circuit has addressed the issue of whether an employee must step outside his or her professional role and take a role adverse to the employer in order to engage in protected activity under § 215(a)(3).   The Eastern District of Washington discussed this issue, the existing Circuit case law, and the absence of a Ninth Circuit ruling in *Stein v. Rousseau,* 2006 U.S. Dist. LEXIS 54939.   The Court found nothing in *Lambert* to suggest a broader interpretation of the FLSA in the Ninth Circuit, stating that, in fact, the Ninth Circuit had agreed with its sister circuits in, for example, acknowledging that "'[t]here is a point at which an employee's concerns and comments are too generalized and informal to constitute complaints that are filed with an employer within the meaning of the [statute].'"   *Id*. at *10-11 (quoting *Lambert*, 180 F.3d at 1007 (quoting *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 44 (1st Cir.1999))) (internal punctuation and citation omitted).   The Court noted that the Ninth Circuit had "never held that anything less than a concrete request for compensation is protected[,]" and found the conclusion "that § 215(a)(3) is triggered only where an employee asserts statutory rights by taking some action adverse to his company . . . implicit in *Lambert's*

rationale, holding, and dicta." *Id*. at *11-12.   In this latter respect, the Court pointed to the

fact that the Ninth Circuit was "strongly influenced" by "'the need to prevent employees' fear

of economic retaliation for *voicing grievances*[,]'" as well as the fact that *Lambert* involved an

explicit demand for compensation. *Id*. (quoting *Lambert*, 180 F.3d at 1007-08) (emphasis

added).   The Court opined that the Ninth Circuit was likely to follow the lead of the First and

Tenth Circuits.   *Id*. at *12.

Turning to the facts of that case, the Court in *Stein* concluded that a general manager's

statements to a company owner as to potential liability for overtime did not constitute a

complaint within the meaning of § 215(a)(3) where the manager "did not assert his, or anyone

else's, right to compensation for overtime[,]" and, instead, "simply warned" his employer that it

"might face exposure to liability under the FLSA as a result of its former overtime-

compensation policy."   *Id*. at *6.   The Court reasoned that the manager's comments in regard

to potential liability would "do little to advance the purpose for which the FLSA was created[,]"

and found they were "offered . . . for the benefit of the company as a whole in his capacity as

one of the company's managers[,]" rather than made in a capacity adverse to his employer.   *Id*.

at *13-14.   It found "telling" the employee's comment:   "'*[W]e've* got a big problem here.'"

*Id*. at *14 (emphasis in original).   The Court dismissed on summary judgment plaintiff's FLSA

claims due to the lack of participation in protected activity.   *Id*. at *14-15.

Plaintiff's case is clearly distinguishable from *Lambert*, first and foremost, in that that

case did not involve employees with managerial or other relevant responsibilities.   *See*

*Lambert*, 180 F.3d at 1001 (addressing FLSA retaliation claim of six former ticket sales agents

of the Seattle SuperSonics).   Notably, while plaintiff identifies various factual differences with

01  the cases relied on by defendant in regard to whether plaintiff was acting outside his

02  professional role and taking on a role adverse to the company, he does not argue that these

03  considerations do not apply.  (*See* Dkt. 21 at 7-8.)   The Court finds the reasoning of the

04  Circuit Courts to have considered the issue, as well as the decision in *Stein*, persuasive.   It,

05  therefore, considers whether plaintiff establishes he engaged in protected activity by stepping

06  outside his professional role and taking on a role adverse to MBA.   *Hagan*, 529 F.3d at 627-30;

07  *Claudio-Gotay*, 375 F.3d at 101-03; *McKenzie*, 94 F.3d at 1486-87; *Stein,* 2006 U.S. Dist.

08  LEXIS 54939 at *10-14.

09       The mere fact that plaintiff raised objections on behalf of his subordinates does not

10  establish protected activity.  *See, e.g., Hagan*, 529 F.3d at 623, 629-30 (finding field service

11  manager who personally objected on behalf of his field technicians in relation to overtime pay

12  and who passed along his technicians' question regarding the legality of the change to the

13  company's Human Resources department did not step outside his role as a manager).   The

14  relevant question is, instead, whether plaintiff was acting outside of his professional role and

15  "personally advocating on behalf of his" subordinates' rights, and had taken on a position

16  adverse to MBA.   *Id*.

17       Plaintiff's testimony can be read to support his claim that he was, in part, acting on his

18  subordinates' behalf, and his 2007 e-mails reflect his disagreement with MBA's position on the

19  issue of whether it had properly classified its employees as exempt.   (*See* Dkt. 18-2, Ex. A and

20  Dkt. 20, Ex. A.)   However, even assuming plaintiff took these steps at the bequest and on

21  behalf of one or more MBA employees, he concedes that doing so fell within his managerial

22  responsibilities.   That his "main purpose" was to correct what he perceived to be an unlawful

ORDER
PAGE -14

01    practice in relation to MBA employees, including one of his specifically identified direct

02    reports, does not necessarily establish either that he stepped outside of his role or was clearly

03    taking a position adverse to the company.   As argued by defendant, the language in plaintiff's

04    2007 e-mails – including his use of the inclusive terms "we" and "our[,]" and his explanation

05    that he had "a responsibility to our employees and to our company" and believed the MBA

06    might be exposed to legal liability – supports the conclusion that he remained in his

07    professional role, acting on behalf of the company in bringing this issue to its attention.   (Dkt.

08    20, Ex. A.)   The fact that plaintiff acknowledged in his e-mails that he knew he "may very well

09    be wrong" detracts from the contention that he had taken on a position adverse to MBA.   (*Id.*)

10          Plaintiff's vague assertion as to oral discussions with Hester does not reveal sufficient

11    detail to support a contrary conclusion.   Nor does the fact that plaintiff provided a comparison

12    of federal and state laws from L&I in his 2007 e-mails demonstrate that he had taken on a role

13    as an advocate for his subordinates' rights and as an adversary to MBA.   A plain reading of the

14    e-mails supports the conclusion that plaintiff took the federal and state law comparison from

15    L&I's website.   (*Id.* (pointing in the first e-mail to "documents on [L&I's] website" and in the

16    second e-mail pasting a "portion of the document" he had previously mentioned).)   There is, in

17    any event, no basis for concluding that the inclusion of this information was for a purpose other

18    than the fulfillment of plaintiff's professional, managerial responsibilities.   Indeed,

19    immediately prior to the inclusion of the federal and state law comparison, plaintiff referenced

20    his "role as director" and consequent "responsibility to our employees and to our company[,]"

21    and his concern that "we as an organization may be exposed to the harsh realities of our legal

22    system."   (*Id.*)

01        Plaintiff's contact with L&I requires additional consideration.   Clearly, contacting L&I

02   as to a potential FLSA violation could be deemed protected activity.   *See generally Lambert*,

03   180 F.3d at 1007 (finding protected activity where employees, *inter alia*, contacted the

04   Department of Labor to inquire as to legality of employer's practices.)   *See also, e.g., Daniel v.*

05   *Winn-Dixie Atlanta, Inc.*, 611 F. Supp. 57, 63 (N.D. Ga. 1985) ("[P]laintiff allegedly not only

06   complained to her employer, but contacted [the Department of Labor], explained her problem,

07   and was advised to demand her rights. A common sense approach, coupled with the prescribed

08   liberal construction, suggests that plaintiff's actions promoted the FLSA's purpose of

09   protecting workers, and § 215(a)(3)'s goals of providing information to federal officials and

10   allowing an employee to assert her rights. To permit her firing for her actions would chill these

11   purposes.")

12        Yet, as argued by defendant, the mere fact that plaintiff contacted L&I does not suffice

13   to establish a genuine issue of material fact as to whether he engaged in protected activity.

14   Plaintiff provides no detail as to the content of his telephone conversation with L&I.   In the

15   opposition to the motion for summary judgment, plaintiff asserts he contacted L&I to find out

16   whether his subordinates and other MBA employees were correctly classified as exempt from

17   the overtime requirements of federal and state laws.  (Dkt. 21 at 5-6.)   In his declaration,

18   plaintiff states he contacted L&I because he thought MBA's practice was unlawful.  (Dkt.

19   21-1, ¶¶4-5.)   Neither explanation demonstrates that plaintiff, in making the phone call, had

20   stepped outside of his professional, managerial role and was in some respect "actively

21   assist[ing] other employees in asserting FLSA rights," *McKenzie*, 94 F.3d at 1486-87, or that he

22   otherwise took on a position adverse to MBA.   In fact, plaintiff declares that he sent his first

ORDER
PAGE -16

01  April 11, 2007 e-mail "[s]hortly after" he spoke to L&I (*id.*, ¶4), and, as discussed above,

02  plaintiff's e-mails on that date contain terms and statements supporting the conclusion that

03  plaintiff was acting on behalf of the company in bringing this issue to MBA's attention.

04         The case law relied on by plaintiff as supporting the argument that his contact with L&I

05  constitutes protected activity does not alter the Court's conclusion.   (*See* Dkt. 21 at 6.)   None

06  of those cases involved managerial or supervisory employees.   *Lambert*, 180 F.3d at 1001;

07  *Morgan v. Future Ford Sales*, 830 F. Supp. 807, 808-09 (D. Del. 1993); *Prewitt v. Factory*

08  *Motor Parts, Inc.*, 747 F. Supp. 560, 561 (W.D. Mo. 1990); *Daniel*, 611 F. Supp. at 58.

09  Moreover, each case contained factual support for the conclusion that the employee who

10  contacted a governmental agency was, in so doing, pursuing a complaint within the meaning of

11  § 215(a)(3).   *See Lambert*, 180 F.3d at 1001, 1007 (plaintiff requested a meeting with

12  employer to discuss overtime wages, telephoned the Department of Labor to request

13  information regarding federal overtime laws, thereafter discussed the issue with her employer

14  and obtained a finding from the Department of Labor that her employer had, in fact, violated the

15  FLSA, and hired an attorney to assist affected employees with their claim); *Morgan*, 830 F.

16  Supp. at 810, 813 (plaintiff contacted Department of Labor to determine whether he and other

17  employees were owed minimum wage for time spent in meetings, was informed that wages

18  were owing for those time periods and that he could file a complaint if he were not so

19  compensated, and confirmed that he had made this contact with multiple managerial

20  employees); *Prewitt*, 747 F. Supp. at 561 ("Plaintiff testified that she called the Wage and Hour

21  Division shortly before her termination regarding Factory Motor's proposed plan to change the

22  salaries and working hours of its employees and that she reported this contact to Factory

ORDER
PAGE -17

01   Motor's general manager."); *Daniel*, 611 F. Supp. at 58, 63 (employee called Department of

02   Labor and inquired as to whether she was being unlawfully denied overtime compensation, was

03   advised that she was within her rights to demand overtime pay and to demand her rights, and

04   proceeded to inform her employer that she believed she was being underpaid).[4]

05         In other words, the facts in those cases "were in no way amorphous" and "clearly

06   constitute[d] the filing of a complaint within the meaning of the statute."  *Lambert*, 180 F.3d at

07   1007.   The facts, as presented by plaintiff in this case – that he called L&I, sent the

08   above-described e-mails, and engaged in various conversations with Hester – do not lead to the

09   conclusion that plaintiff did "something outside of his . . . job role in order to signal to [his]

10   employer that he . . . [was] engaging [in] protected activity under Section 215(a)(3)."  *Hagan*,

11   529 F.3d at 628.   Instead, the Court finds plaintiff's assertion that he took on the role of an

12   advocate for his subordinates' rights and an adversary to MBA ill-supported, contradicted by

13   evidence submitted, and largely conclusory.  *See, e.g.*, *Soremekun v. Thrifty Payless, Inc.*, 509

14   F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving

15   papers is insufficient to raise genuine issues of fact and defeat summary judgment."); *Arpin v.*

16   *Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (conclusory statements

17   unsupported by facts are insufficient to defeat a motion for summary judgment).

18         In sum, the Court finds no material factual dispute on the issue of whether plaintiff

19   _____

20   4  The Court in *Daniel* denied summary judgment upon finding a material factual dispute on the issue of
     whether the employer was aware of the employee's contact with the Wage and Hour Division of the
     Department of Labor.  611 F. Supp. at 58, 63.  Defendant in this case similarly denies knowledge of

21   plaintiff's contact with L&I (*see* Dkts. 23 & 24), and asserts that, accordingly, plaintiff is unable to
     establish the third element of his prima facie case – a causal link between the protected activity and the
     adverse action.  Because the Court finds this matter appropriate for dismissal in relation to the first

22   element of plaintiff's prima facie case, it need not and does not consider this argument.

ORDER
PAGE -18

01  engaged in protected activity by stepping outside of his professional role and taking on a role

02  adverse to MBA in relation to the issue of overtime pay.   The Court concludes that, given

03  plaintiff's failure to make such a showing, he fails to establish that he engaged in protected

04  activity under § 215(a)(3).   Defendant is, therefore, entitled to summary judgment.

05                                                       CONCLUSION

06          For the reasons described above, the Court finds defendant entitled to summary

07  dismissal of plaintiff's claims.   Defendant's motion for summary judgment is, therefore,

08  GRANTED and this case DISMISSED.

09          DATED this 8th day of September, 2010.

10

11                                              /s/ MARY ALICE THEILER
                                                Mary Alice Theiler
12                                              United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

ORDER
PAGE -19